**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ORLIANNYS GABRIELA NAVARRO-MOLINA,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**WARDEN, Diamondback Correctional Facility, et al.,**<br><br>**Respondents.** | ) | **Case No. CIV-26-2046-PRW** |

**REPORT AND RECOMMENDATION**

Petitioner Orliannys Gabriela Navarro-Molina, a noncitizen[1] and Venezuelan national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 her detention by U.S. Immigration and Customs Enforcement ("ICE"). She also filed a Memorandum of Law in Support. Doc. 2. United States District Judge Patrick R. Wyrick referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). The undersigned set a briefing schedule, Doc. 8, and the Petition is at issue. For the reasons below, the undersigned recommends that the Court deny the Petition.

Petitioner also filed an Emergency Motion to Expedite Consideration of Petition for Writ of Habeas Corpus. Doc. 3. Adoption of this recommendation would moot the pending motion.

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. Background

Petitioner, a citizen of Venezuela, entered the United States on or about July 1, 2021, at or near Del Rio, Texas. Doc. 2 at 1; Doc. 10-1 at 1 (Notice to Appear). On July 14, 2021, the Government released her under an Order of Release on Recognizance. Doc. 1-1 at 1 (Order of Release on Recognizance); Doc. 2 at 1. On December 6, 2021, she applied for asylum. Doc. 2 at 1; Doc. 10-2 at 2 (Record of Deportable/Excludable Alien). Petitioner was arrested for a DUI on July 21, 2024, and for battery and disorderly intoxication on September 7, 2025. Doc. 10-2 at 3. Both charges are pending. *Id.*

On April 6, 2026, Florida police arrested Petitioner following a traffic stop and charged her with resisting arrest without violence. Doc. 2 at 1; Doc. 10-2 at 2. Officials held her on an ICE detainer following her arrest, and she was transferred to ICE custody on April 22, 2026. Doc. 2 at 2; Doc. 10-2 at 2; Doc. 10-3 at 1 (Warrant for Arrest of Alien). On April 24, 2026, ICE placed her into removal proceedings before the Immigration Court under 8 U.S.C. § 1229a through a Notice to Appear ("NTA") and charged her with being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as someone without valid entry and travel documents when she applied for admission.[2] Doc. 10-1 at 1, 4.

An Immigration Judge ("IJ") conducted a bond hearing for Petitioner on July 10, 2026. Doc. 10-4 at 1 (Order of IJ). The IJ denied a bond after finding she did not "me[et] her burden . . . to establish that she is not a danger to the community" due to a "severe,

[2] Petitioner does not assert any ICE regulations were violated or otherwise challenge other circumstances of her arrest and detention. *See generally* Pet.; Doc. 2.

escalating history of dangerous criminal conduct over the past two years" that "eclipsed" her "minor positive equities." *Id.*; *see also id.* at 2 (finding Petitioner "poses an unmitigated danger to both community property and the physical safety of the public and law enforcement personnel" and finding "detention . . . necessary to safeguard the public"). The IJ made the following additional findings:

> . . . The 31-year-old [Petitioner] graduated high school in Venezuela, has lived in the United States for five years since her entry, owns a vehicle, and was briefly employed for five months at a tire shop. She has no local family ties, as her parents and four siblings reside in Venezuela, and she is unmarried with no children. Most critically, her criminal record reveals an active pattern of substance abuse, reckless vehicle operation, and physical aggression toward law enforcement officers.
>
> Specifically, the record contains multiple active, pending criminal arrests that directly establish a localized danger to community safety. On July 21, 2024, [Petitioner] was arrested by the Coral Springs Police Department for Driving Under the Influence of Alcohol or Drugs. The Board of Immigration Appeals has firmly established that driving under the influence represents a severe public safety threat. [Petitioner]'s danger to the public is further highlighted by her admission that she failed to complete her court-ordered DUI program because she could not afford to finish paying for her mandatory ignition interlock device.
>
> Following her initial DUI arrest, [Petitioner]'s dangerous conduct rapidly escalated. On September 7, 2025, she was arrested by the Coral Gables Police Department and charged with Battery on a Law Enforcement Officer with Prejudice and Disorderly Intoxication. This offense demonstrates physical violence directed at public safety officials while under the influence. Most recently, on April 6, 2026, [Petitioner] was arrested by the Florida Highway Patrol and charged with Refusing Obedience to Police, Careless Driving, and Resisting an Officer Without Violence. This latest arrest demonstrates a continuous, ongoing refusal to comply with traffic safety laws and law enforcement orders.

*Id.* at 1-2.

On September 10, 2026, an IJ ordered Petitioner removed. *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last visited Nov. 17, 2026). On September 28, 2026, she appealed the removal order to the Board of Immigration Appeals, and the appeal is pending. *Id.* Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1. Her asylum request also is pending. *See* Doc. 10-2 at 2.

When Petitioner filed her Petition, she was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. She remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Nov. 17, 2026).

## II. **Petitioner's Claims**

Petitioner asserts four counts in her Petition.

- **Count I: Violation of Due Process.** Petitioner alleges she was "detained solely because of [her] civil immigration status" and her "continued detention cannot be justified solely by reference to past criminal conduct." Pet. at 6. She alleges her "continued detention has become excessive and no longer bears a reasonable relationship to the limited regulatory purposes of civil immigration detention," which "violates the Due Process Clause of the Fifth Amendment." *Id.*; *see also* Doc. 2 at 2-6.

- **Count II: Lack of Necessity.** Petitioner alleges her continued detention is "unnecessary" because she has "complied with [her] immigration proceedings, timely applied for asylum, received employment authorization, maintained lawful employment, and worked to rebuild [her] life." Pet. at 6 (citation modified). She also alleges her detention should end because "the Government previously determined that [she] could safely remain in the community when it released [her] on an Order of Recognizance and later authorized [her] to work legally in the United States." *Id.* (citation modified).

- **Count III: Violation of Due Process.** Petitioner alleges her "continued detention is based primarily upon [her] prior criminal

history without meaningful consideration of [her] present circumstances" and "fails to account for the substantial evidence demonstrating that [she has] worked to rebuild [her] life and that [she is] capable of complying with future immigration proceedings." *Id.* She alleges her detention therefore is "arbitrary and inconsistent with due process." *Id.*

- **Count IV: Deprivation of Liberty.** Petitioner alleges her "detention has become excessive and no longer serves the limited regulatory purposes for which immigration detention is authorized," including because she was "transferred from Florida to Oklahoma, hundreds of miles away from [her] family, employer, community, and the witnesses and evidence necessary to support [her] pending asylum case." *Id.* at 7 (citation modified). She alleges her detention is an impermissible "loss of [her] physical liberty and imposes hardships that cannot be remedied after the fact." *Id.*

Petitioner asks the Court to "order [her] immediate release." *Id.* (citation modified); *see also* Doc. 2 at 6; Reply at 4.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. The Court has jurisdiction to consider the Petition.

As a threshold matter, the Court has jurisdiction to address Petitioner's constitutional claim challenging the adequacy of her bond hearing. Under 8 U.S.C. § 1226(e), "a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond." *Kumar v. De Anda-Ybarra*, No. CIV-26-164-

R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026). That section "does not, however, deprive [courts] of jurisdiction to hear constitutional challenges to the extent of the Government's detention authority under the statutory framework as a whole." *Nucamendiz v. Hyde*, No. 25-CV-13851, 2026 WL 221449, at *1 (D. Mass. Jan. 28, 2026) (citation modified); *see also Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026) (finding section "1226(e) does not preclude habeas jurisdiction over constitutional claims or questions of law" (citation modified)).

Respondents do not dispute this Court's jurisdiction for habeas review in these circumstances. *See* Resp. at 2. Judges in this District have found jurisdiction to consider whether a petitioner's due process rights were violated at an IJ's bond hearing. *E.g.*, *Sin Johal v. Bondi*, No. CIV-25-1408-J, 2026 WL 893185, at *2 (W.D. Okla. Apr. 1, 2026) (analyzing due process and agreeing "a procedural due process violation likely occurred" at a bond hearing when the wrong standard was used, but it was rendered harmless by the IJ's subsequent order citing the correct standard); *Singh v. Mullin*, No. CIV-26-1083-J, 2026 WL 3027159, at *2 (W.D. Okla. Sept. 30, 2026) (R&R) (finding limited habeas jurisdiction existed, but no due process violation occurred), *adopted* 2026 WL 3030050, at *1 (W.D. Okla. Oct. 8, 2026). Accordingly, the Court has jurisdiction over Petitioner's claim to the extent she asserts her due process rights were violated at the bond hearing.

**B. Petitioner has not shown the IJ violated her due process rights at the bond hearing.**

Petitioner argues she is detained under 8 U.S.C. § 1226(a). Reply at 1-2. Respondents do not clearly take a position regarding the statute under which Petitioner is

detained. *See* Resp. at 2-3. But the IJ's Order indicates detention is under § 1226(a) through its application of *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006), which is specific to the § 1226(a) context. 24 I. & N. Dec. at 37; *cf. Lopez v. Andrews*, No. 26-cv-6138, 2026 WL 2416013, at *2 (E.D. Cal. Aug. 18, 2026) (finding a noncitizen "was already provided a bond hearing pursuant to § 1226(a)" to be indicative of his detention under that statute, not § 1225(b)(2)).[3]

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))). When "§ 1226 governs Petitioner's detention, the due process owed to [her] is that provided for in § 1226—namely, an individualized bond hearing before an IJ." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025); *see also Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("Because § 1226(a) governs Petitioner's detention, Petitioner is entitled to the custody procedures provided by that statute. . . . An individualized custody redetermination hearing [will] provide Petitioner with the process he is due under the statute.").

On July 10, 2026, the IJ denied bond after finding Petitioner did not "establish that she is not a danger to the community." Doc. 10-4 at 1. This Court's review of the IJ's decision is limited to whether the IJ exercised his discretion in accordance with the law

[3] Because it is clear Petitioner is detained under § 1226(a) from the fact she was provided a bond hearing, the undersigned finds Respondents' arguments regarding mandatory detention, Resp. at 2-3, not relevant to the circumstances of this matter.

when denying Petitioner bond. She must show the IJ's "decision was somehow legally erroneous or unconstitutional." *Kumar*, 2026 WL 753944, at *2. "Habeas relief is appropriate only if the [IJ's] exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *Nucamendiz*, 2026 WL 221449, at *2 (citation modified). "To make this showing, [Petitioner] can either point to the language of the immigration judge's opinion or demonstrate that the evidence itself could not—as a matter of law—have supported the immigration judge's decision to deny bond." *Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 143 (D. Mass. 2019) (citation modified).

"In a fundamentally fair bond hearing, due process has three essential elements. The noncitizen '(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his or her interests.'" *De Souza v. Soto*, No. CV 25-18734, 2026 WL 102946, at *3 (D.N.J. Jan. 14, 2026) (citation modified) (quoting *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022)); *see also Singh*, 2026 WL 3027159, at *3 (applying these requirements); *Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 1239322, at *3-4 (W.D. Okla. Apr. 17, 2026) (R&R) (same), *adopted sub nom.*, *Casallas v. Jones*, 2026 WL 1233127, at *1 (W.D. Okla. May 5, 2026).

Petitioner fails to make the required showing of a constitutionally defective hearing. The IJ indicated he gave "full consideration [to] the evidence presented" to him before ruling on bond. Doc. 10-4 at 1. Petitioner has not shown or even alleged (1) the evidence relied on by the IJ was not provided to her, (2) she or her counsel was not allowed to make

arguments to the IJ, or (3) the IJ's determination was not individualized to her. *See De Souza*, 2026 WL 102946, at *3 (denying petitioner's motion to enforce a habeas judgment requiring a bond hearing where "the IJ did not 'summarily' deem Petitioner a flight risk" but conducted an individualized review); *see also Nucamendiz*, 2026 WL 221449, at *2 (finding the IJs' determinations that petitioners were a flight risk did not violate due process because "Respondents and Petitioners were each permitted to present evidence of risk of flight at their respective hearings, and the reasons given by the immigration judge were, in each case, specific to the petitioner's circumstances and plausibly related to the risk that the petitioner would abscond"); *accord Velasquez Salazar*, 806 F. Supp. 3d at 1243 (granting habeas relief when materials submitted by the petitioner to the IJ were not given "meaningful consideration").

While Petitioner alleges the IJ "fail[ed] to account for the substantial evidence demonstrating [she had] worked to rebuild [her] life," Pet. at 6, she does not identify any specific evidence disregarded by the IJ. When "the burden is on the petitioner" in a bond hearing, "it is the sufficiency of [her] showing that is at issue" when assessing constitutionality, "not whether the government produced proof of its own." Order of June 18, 2026, *Singh v. Mullin*, No. CIV-26-712-HE, Doc. 13, at *7 (W.D. Okla.). The Court should deny Petitioner's due process claims to the extent she challenges the adequacy of her prior bond hearing.[4]

---

[4] Petitioner frames her Petition as a constitutional challenge that her bond hearing did not comply with due process. But, in many respects, she asks the Court to re-weigh the evidence presented at the bond hearing to reach a different result from the IJ by discounting

### C. Petitioner's challenge to the length of her § 1226(a) detention also fails.

Petitioner not only challenges her initial bond hearing but also alleges more generally that her ongoing ICE detention of nearly seven months is "excessive and no longer serves the limited regulatory purposes for which immigration detention is authorizes." Pet. at 7. The undersigned liberally construes the Petition to allege Petitioner's prolonged detention in ICE custody violates her rights to due process.

"The Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citation modified). Such protections apply to all noncitizens in the United States, whether their presence is "lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id*. at 690. Under these principles, civil immigration detention satisfies due process only in "certain special and narrow nonpunitive circumstances," and must "bear[] a reasonable relation to the purpose for which the [noncitizen]" is detained. *Id*. (citation modified). For example, the Supreme Court has identified such purposes to mitigate the risk of danger to the community and to prevent the noncitizen's flight. *Id*. at 690-91; *see also Demore*, 538 U.S. at 527-28.

---

the weight the IJ attributed to her prior arrests. Petitioner provides no authority that prior arrests cannot be considered by an IJ in determining bond. In any event, this Court cannot review the IJ's discretionary bond determination, as 8 U.S.C. § 1226(e) "strips federal courts of jurisdiction to hear challenges to an IJ's discretionary decision to keep a noncitizen in detention." *Nucamendiz*, 2026 WL 221449, at *1 (citation modified); *see also Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) (citing § 1226(e) and noting "the Attorney General's exercise of discretion is not subject to judicial review").

A noncitizen's detention motivated by these purposes may still violate the Due Process Clause when the detention becomes unreasonably prolonged.[5]

Due process challenges involve two questions: "the first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Courts considering habeas petitions often have applied the framework from *Mathews v. Eldridge*, 424 U.S. 319 (876), to determine what constitutional process is required in immigration detention cases with prolonged detention. *See, e.g.*, *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("In determining what procedures sufficiently protect due process in the immigration context, courts have applied the framework established in [*Mathews*]."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28-39 (1st Cir. 2021) (applying *Mathews* to determine whether a noncitizen detained under § 1226(a) was entitled to a bond hearing where the Government bears the burden of proof); *Bangemu v. Gantt*, No. CIV-815-D, 2026 WL 2323601, at *4-7 (W.D. Okla. July 30, 2026) (R&R) (applying *Mathews* to analyze a due-process challenge to prolonged detention under § 1226(a) after a bond hearing), *adopted*, 2026 WL 2329865 (W.D. Okla. Aug. 11, 2026).

Applying the *Mathews* factors, the undersigned recommends denial of any habeas relief.

---

[5] A noncitizen may claim their detention violates either their substantive or procedural due process, though Petitioner does not specify a basis here.

### 1. Petitioner's private liberty interest weighs in her favor.

The first *Mathews* factor is "the private interest that will be affected." 424 U.S. at 335. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Indeed, "in our society liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987) (citation modified). This liberty interest also applies to noncitizens, as "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690 (citation modified).

Respondents deprived Petitioner of her freedom when they detained her in April 2026, and they continue to detain her under § 1226(a) after a bond hearing. Put differently, while she remains in detention, her private interest in being free from imprisonment is at stake. Thus, the first *Mathews* factor favors procedures that carefully protect Petitioner's liberty interest. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1243 (D.N.M. 2025) ("This Court need not wait another six, twelve, or eighteen months to determine that the first *Mathews* factor weighs in Petitioner's favor. Petitioner's private interest in being free from detention—and unlawful detention at that—is at stake now."); *Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the first *Mathews* factor favored a petitioner in ICE custody because his interest in being free from detention is "the most elemental of liberty interests" (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004))).

### 2. There is little risk of an erroneous deprivation of Petitioner's due process rights due to constitutionally sufficient procedures.

The second *Mathews* factor is "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. In *Jennings*, the Supreme Court held § 1226(a) does not confer a statutory right to periodic bond hearings, and the canon of constitutional avoidance did not provide a basis for reading such a right into the statute. 583 U.S. at 297-303. The Court, though, ultimately left unresolved the constitutional question of whether periodic bond hearings may be warranted under due process. *Id*. at 312-13.

Here, Petitioner's claim that her § 1226(a) detention is prolonged has divided courts of appeals, because most petitioners making this type of claim request an additional bond hearing. The First and Second Circuits ordered additional bond hearings on the records before them. *See Hernandez-Lara*, 10 F.4th at 30, 39-41 (holding § 1226(a) procedures invalid as applied to a noncitizen detained for ten months who received a bond hearing one month into detention, and ordering a new hearing at which the Government bore the burden to justify continued detention); *Velasco Lopez v. Decker*, 978 F.3d 842, 853-56 (2d Cir. 2020) (holding once § 1226(a) detention becomes "prolonged," a detainee is entitled to a new hearing at which the Government bears the burden to justify continued detention).[6]

[6] Additional circumstances in *Velasco Lopez* warrant acknowledgment. The noncitizen's prolonged detention was largely attributable to ICE delays in producing the detainee for his criminal proceedings. 978 F.3d at 852-53. Bond was then denied based on the very charges that ICE's own conduct had kept pending. *Id.* The risk of erroneous deprivation

The Third and Ninth Circuits have rejected claims that prolonged § 1226(a) detention entitles a petitioner to a second bond hearing as a matter of due process, while reserving the possibility of relief on different records. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279-80 (3d Cir. 2018) (rejecting a detainee's claim "to compel a second bond hearing despite alleging no constitutional defect in the one he received," while recognizing "that, despite an initial bond hearing, detention under § 1226(a) might become unreasonably prolonged, whether by virtue of government delay or some other cause," and declining to "decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing" (citation modified)); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203, 1213-14 (9th Cir. 2022) (holding the Due Process Clause does not entitle a detainee to "a second bond hearing at which the government bears the burden of proof," but declining to "foreclose all as-applied challenges to § 1226(a)'s procedures").

Petitioner has not identified any precedent indicating that prolonged detention alone entitles an ICE detainee to another bond hearing.[7] *See, e.g.*, *Borbot*, 906 F.3d at 277 ("But [the petitioner] cites no authority, and we can find none, to suggest that duration alone can sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations."); *Velasco Lopez*, 978 F.3d at 855 n.13 (declining "to establish a bright-line rule for when due process entitles an

in that case was not theoretical; it was demonstrated on the record.

[7] The authorities from this District identified by Petitioner, Reply at 3, are from cases where no bond hearing was conducted before the relevant habeas petition was filed.

individual detained under § 1226(a) to a new bond hearing with a shifted burden"); *Hernandez-Lara*, 10 F.4th at 30 n.4 (declining to determine when detention becomes sufficiently prolonged to require another hearing).

Petitioner stands in a position most akin to the noncitizen in *Borbot*. She identifies no viable constitutional defects in the prior bond hearing, and the record evidence does not establish a risk of erroneous deprivation when the IJ denied Petitioner bond. She also fails to show how additional procedures would diminish the risk of an erroneous deprivation of her due process rights. And regulations provide existing procedures to allow a noncitizen to appeal an adverse bond decision and to request custody redetermination based on materially changed circumstances. 8 C.F.R. §§ 236.1(d)(3), 1003.19(e). Petitioner received a constitutionally sufficient bond hearing, she has additional procedures available to appeal or to seek a second hearing, and she fails to cite any applicable legal authority to support her position. The second *Mathews* factor weighs against her.

### 3. The Government's interest and administrative burden are substantial.

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents have no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Velasco Lopez*, 978 F.3d at 854; *see also Demore*, 538 U.S. at 515 (indicating the Government has an interest in "protecting the public from dangerous criminal aliens."). Indeed, through detention, the Government seeks to increase the chance that, if ordered

removed, the noncitizens will be successfully removed. *Rodriguez Diaz*, 53 F.4th at 1208 (citing *Demore*, 538 U.S. at 528). Also, while the administrative burden of an additional hearing is "minimal," *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (citation modified), the Court still must consider whether additional procedure would meaningfully reduce the risk of an erroneous deprivation.

The Government's interest in detaining Petitioner until removal is substantial. An IJ in July 2026 found Petitioner failed to establish she was not a danger to the community. Doc. 10-4 at 1. Petitioner has not adequately explained how additional procedures would meaningfully reduce the risk of error when an IJ already reviewed the record evidence to determine whether she presents a risk of dangerousness and determined she does. The procedures guaranteed by the regulations already seek to prevent any erroneous deprivation of her rights. Further, though not administratively final, Petitioner was ordered removed, and the Government has a substantial interest in ensuring noncitizens who are ordered removed are removed. The third factor weights in Respondents' favor.

**4. Conclusion**

In sum, the first *Mathews* factor favors Petitioner, and the second and third factors favor Respondents. Petitioner does not identify any constitutional inadequacies in her earlier bond hearing or relevant regulations, and she presents no case authority requiring a second or periodic bond hearing based solely on the length of § 1226(a) detention. The Court should reject Petitioner's claims on the merits to the extent she alleges a violation of her due process rights based on prolonged ICE detention.

## V. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **DENY** the Petition for habeas relief, Doc. 1. Adoption of this Report and Recommendation would **MOOT** Petitioner's pending Emergency Motion to Expedite Consideration of Petition for Writ of Habeas Corpus, Doc. 3.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **December 1, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **December 8, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 17th day of November, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE